**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAVIER RUIZ-TERRAZAS,

      Defendant-Appellant.

No. 06-2138

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-05-2635 JC)**

---

Charles A. Harwood, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **HENRY, ANDERSON,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

Javier Ruiz-Terrazas contends that the district court erred when it failed to articulate its reasons for rejecting his arguments, based on the factors set forth in 18 U.S.C. § 3553(a), that a sentence below the range recommended by the United

States Sentencing Guidelines ("USSG" or the "Guidelines") was warranted. Mr. Ruiz-Terrazas also argues that sentences falling within the Guidelines' advisory ranges should not be presumed reasonable and that the district court impermissibly "double counted" his criminal history by using it to calculate not just his proper criminal history category but also his criminal offense level. We are constrained to disagree with Mr. Ruiz-Terrazas and affirm the district court's judgment.

I

In late 2005, Mr. Ruiz-Terrazas pled guilty to an indictment charging him with violating 8 U.S.C. §§ 1326(a)(1), (a)(2) and (b)(2) – that is, illegally reentering the United States after a prior deportation which itself was initiated after Mr. Ruiz-Terrazas's commission of an aggravated felony in this country. As it happens, Mr. Ruiz-Terrazas's criminal history in the United States is not limited to these matters but includes convictions for third degree assault on a law enforcement officer, resisting arrest, refusing an order of law enforcement, aggravated burglary, burglary of a dwelling house, as well as six other arrests (stealing, obstructing law enforcement, third degree assault, disorderly conduct, and two for domestic violence) for which no disposition information appears in his pre-sentence report ("PSR").[1]

---

[1] In addition, Mr. Ruiz-Terrazas received numerous disciplinary reports
(continued...)

The PSR presented to the district court in this case recommended a base offense level of eight and a sixteen-level enhancement, pursuant to USSG § 2L1.2(b)(1)(A), because of Mr. Ruiz-Terrazas's prior conviction for aggravated burglary. The PSR further recommended a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 21. An offense level of 21, coupled with a criminal history category of IV, resulted in a recommended sentence of 57 to 71 months under the Guidelines. The PSR did not identify any potential departure issues, and noted that its calculations were "provided as a guide" only and were not "binding on the Court."

On April 12, 2006, Mr. Ruiz-Terrazas filed a sentencing memorandum requesting a sentence below the range suggested by the Guidelines, based on his assessment of the factors set out in Section 3553(a). The United States filed a response opposing Mr. Ruiz-Terrazas's request. On April 25, 2006, Mr. Ruiz-Terrazas appeared before the district court for sentencing. Defense counsel was permitted to argue and centered his presentation on the fact that the range suggested by the Guidelines would treat Mr. Ruiz-Terrazas "as harshly" as

_____

[1](...continued)
while incarcerated, including for possession of contraband and fighting, and multiple violations of probation while released. All of these events occurred within just eight years prior to Mr. Ruiz-Terrazas's arrest on the present offense (despite the fact that Mr. Ruiz-Terrazas was incarcerated for more than two of those years) and spanned at least four states (Colorado, Kansas, Missouri, and New Mexico).

defendants convicted of crimes such as robbery and arson. Counsel argued that a sentence with appropriate sensitivity to Section 3553(a) factors would be 30 months. The government argued against the lower sentence, citing the serious nature of Mr. Ruiz-Terrazas's prior criminal history. Ultimately, the district court denied Mr. Ruiz-Terrazas's request for a below-Guidelines sentence and imposed a sentence of 57 months – the bottom of the Guidelines range.

Before pronouncing the sentence, the district court stated that it had "reviewed the Presentence Report['s] factual findings[,] . . . considered the guideline applications[,] and the factors set forth in 18 United States Code, Section 3553(a)(1) through (7)." The district court also noted that "the defendant reentered the United States subsequent to being convicted of an aggravated felony," and its belief that the sentence advised by the Guidelines was reasonable; the court did not, however, specifically address the Section 3553(a) arguments Mr. Ruiz-Terrazas pursued in his brief or at oral argument. Mr. Ruiz-Terrazas raised no contemporaneous objection to the district court's explanation of his sentence and judgment was entered on April 27, 2006.

II

a. Because Mr. Ruiz-Terrazas did not object to the procedure by which his sentence was determined and explained, we may reverse the district court's judgment only in the presence of plain error. *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006); *United States v. Lopez-Flores*, 444 F.3d

1218, 1221 (10th Cir. 2006). Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Lopez-Flores*, 444 F.3d at 1222.

Mr. Ruiz-Terrazas does not dispute that, before imposing sentence, the district court entertained extensive Section 3553(a) argument from his counsel, both in writing and orally, and explained on the record that it had considered "the factors set forth in 18 United States Code Section 3553(a)(1) through (7)." Still, as Mr. Ruiz-Terrazas notes, the district court did not *specifically* state *why* it rejected his Section 3553(a) arguments. And it is this, Mr. Ruiz-Terrazas contends, that constitutes reversible error. Because he "raised a non-frivolous argument implicating the 18 U.S.C. § 3553(a) sentencing factors," Mr. Ruiz-Terrazas asserts, "the district court was required to address the argument. Since it did not do so, remand for a new sentencing hearing is required." Appellant's Reply Brief at 2-3.

Mr. Ruiz-Terrazas's argument draws on and highlights our prior decisions in two lines of cases associated with *Lopez-Florez* and *United States v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006), both of which concern a district court's obligations of explanation at sentencing. The parties seem to think our lines of cases are at odds and perhaps even irreconcilable. We disagree and seek today to

clarify our thinking in this area, one that has become of recurring significance for litigants and district courts alike in our jurisdiction.

b.     We begin by noting our view that this case can be resolved at the first step of the plain error analysis – that is, in our view, the district court committed no error at all – because Mr. Ruiz-Terrazas's argument runs afoul of Section 3553(c)'s plain language.  Where, as here, a district court imposes a sentence falling within the range suggested by the Guidelines, Section 3553(c) requires the court to provide only a general statement of "the reasons for its imposition of the particular sentence."[2]  By contrast, when imposing a sentence *outside* the Guidelines range, the same statute requires a district court to state "the *specific* reason for the imposition of a sentence . . . , *which reasons must also be stated with specificity* in the written order of judgment and commitment."  18 U.S.C. § 3553(c)(2) (emphasis added).   *See*, *e.g.*, *United States v. Hall*, 1473 F.3d 1295, 1314 (10th Cir. 2007) (requiring explanation of sentence departing by more than 30% from Guidelines range).  We do not feel at liberty to ignore Congress's requirement of a greater degree of explication for sentences falling within the scope of (c)(2) than those falling within the ambit of (c)(1); the decision by a coordinate branch of government to use the term "with specificity"

---

[2]  In addition, Section 3553(c)(1) requires the district court to state "the reason for imposing a sentence at a particular point within the [Guidelines] range" when imposing a sentence for which the Guidelines range exceeds 24 months.

in one portion of the statute but not another is entitled to effect and our respect. *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation omitted)); *Hain v. Mullin*, 436 F.3d 1168, 1177 (10th Cir. 2006) (Briscoe, J., dissenting) ("[I]t is necessary to examine the phrase at issue in light of the statute as a whole. . . . The reason for doing so is clear: a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (internal quotation, citation, and alteration omitted)); *see also Johnson v. United States*, 529 U.S. 694, 704-13 (2000) (contrasting the use of "terminate" in a statute with the use of "revoke" in another part of the same statute); *Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1298 (10th Cir. 2005) (hereinafter "*PACE*") (contrasting the use of "civil action" in one statute with the use of "civil penalty action" in another).

c. Congress's decision in Section 3553(c) not to require as specific a statement of reasons for sentences imposed within the Guidelines range is consistent with the fact that the Guidelines themselves seek, in some measure, to

give meaning to the considerations embodied in Section 3553(a). In setting forth the purposes and goals of the Guidelines, Congress specifically charged the Sentencing Commission with the task of formulating a structure for sentencing that would "assure the meeting of the purposes of sentencing as set forth in [18 U.S.C. §] 3553(a)(2)." 28 U.S.C. § 991(b)(1)(A). Congress also instructed the Sentencing Commission to consider, "to the extent that they do have relevance," various factors relating to the nature and circumstances of the offense, the need for deterrence, public policy concerns, and the history and personal characteristics of the defendant (*see* 28 U.S.C. §§ 994(c) & (d)) – factors similar to those Congress has tasked district courts with considering under Section 3553(a). *See also United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006) ("[T]he advisory Guidelines are not something separate and apart from Congress's objectives in § 3553(a). Rather, they embody many of those objectives."); *United States v. Shelton*, 400 F.3d 1325, 1332 (11th Cir. 2005) ("[T]he factors the Sentencing Commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under *Booker* and § 3553(a).")

To be sure, it would be an exaggeration to suggest a perfect overlap between the Sentencing Commission's statutory charge and the factors in Section 3553(a), and some could challenge how well certain portions of the Guidelines actually fulfill Section 3553(a)'s purposes. But there is no gainsaying that there

is a sympathy between the goals and purposes of the Guidelines and those of Section 3553(a), with the former acting at a greater level of generality to suggest certain background sentencing norms and the other seeking at a greater level of particularity to ensure many of those same norms are given appropriate effect in the context of, and given the variations found in, individualized cases. Given this congruence, if not identity, of purposes, Congress could, and we think did, reasonably make a determination that different levels of specificity of reasoning and explication are required from the district court based on how closely its own judgment about the appropriate sentence in a particular case aligns with the judgment embodied in the Guidelines. That is to say, Section 3553(a) and the Guidelines may serve related (not identical) purposes and Congress not unreasonably took this into account when prescribing the district court's obligations in Section 3553(c).

d. Just as we see nothing in Section 3553(c) requiring a specific explanation from the district court of a sentence falling within the Guidelines range, neither do we see anything in Section 3553(a) compelling such a result. Section 3553(a) imposes on the district court a duty to *"consider"* a variety of important sentencing considerations. But it nowhere imposes on the court a duty to address those factors on the record; by contrast, Section 3553(c) speaks expressly to the nature of the district court's duty to explain itself on the record. It would be incongruous, we think, to read a duty of explanation into subsection

(a) when the exact matter has already been considered and addressed by Congress in subsection (c).  *See Johnson*, 529 U.S. at 704-13; *Davis*, 489 U.S. at 809; *PACE*, 428 F.3d at 1298.

It would also appear to be inconsistent with other background legal norms as well.  We traditionally presume, absent some indication in the record suggesting otherwise, that "'[t]rial judges are presumed to know the law and apply it in making their decisions.'"  *United States v. Russell*, 109 F.3d 1503, 1512-13 (10th Cir. 1997) (quoting *Walton v. Arizona*, 497 U.S. 639, 652 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002)).  We likewise traditionally do not disturb decisions entrusted by statute or other rule of law to the discretion of a district court unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *United States v. Weidner*, 437 F.3d 1023, 1042 (10th Cir. 2006) (internal quotation omitted) (concerning the admission of evidence).  And there can be perhaps no greater example of discretion statutorily entrusted to the district courts than the act of sentencing – a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders.  *See generally United States v. Booker*, 543 U.S. 220, 233 (2005) ("We have never

doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *United States v. Aguayo-Gonzalez*, 472 F.3d 809, 811 (10th Cir. 2007) (post-*Booker*, a "[district] court may use its discretion to impose a sentence either within the Guidelines range or outside of it, relying on the sentencing factors set out in 18 U.S.C. § 3553(a)").

e.    Our conclusion today is consistent with and compelled by our prior pronouncements in this arena.  We have emphasized repeatedly the fact that, when imposing a sentence within the properly calculated Guidelines range, a district court must provide, as Section 3553(c) indicates by its plain language, only "'a general statement noting the appropriate guideline range and how it was calculated.'" *Lopez-Flores*, 444 F.3d at 1222 (quoting *United States v. Underwood*, 938 F.2d 1086, 1092 (10th Cir. 1991)); *see also United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) ("It is true that the district court did not march through § 3553(a)'s sentencing factors, but we have never imposed such a requirement."); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) ("When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required.").  We have further emphasized that this general statement need involve no "'ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words'" to prove that it considered

the various factors Congress instructed it to consider. *Lopez-Flores*, 444 F.3d at

1222 (quoting *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004)).

In holding as we do that a specific discussion of Section 3553(a) factors is

not required for sentences falling within the ranges suggested by the Guidelines,

we pause to emphasize that we seek to delineate only the boundaries of what is

permissible conduct by a district court under our precedents and do not

necessarily mean to describe best practices. Indeed, a more detailed sentencing

explanation can often prove beneficial, even if it is not mandatory, helping to

reduce confusion among the parties, facilitate and expedite judicial review, and

provide guidance to practitioners and other defendants, enabling them to better

predict the type of sentence that will be imposed in their cases.

Mr. Ruiz-Terrazas contends that, notwithstanding the plain language of

Section 3553 and our holding in *Lopez-Florez*, our holdings in *Sanchez-Juarez*

and its progeny,[3] command a different result. But this misunderstands our

precedents. The cases on which Mr. Ruiz-Terrazas seeks to rest stand simply (but

significantly) for the inverse of *Russell*, *Walton*, *Weidner* and *Lopez* itself; that is,

they hold that we will step in and find error when the record gives us reason to

_____

[3] *See United States v. Doe*, No. 06-3156, 2007 WL 80724, at *3 (10th Cir. Jan. 12, 2007) (unpub.) ("the district court did not reference any of the § 3553(a) factors" and "we cannot discern from the record whether the district court . . . considered . . . the § 3553(a) factors"); *United States v. Serna-Valdiviezo*, 191 Fed. Appx. 724, 727-28 (10th Cir. 2006) (unpub.); *United States v. Vaca-Perez*, 178 Fed. Appx. 841 (10th Cir. 2006) (unpub.).

think that our ordinary (*Lopez-Florez*) presumption that the district court knew and applied the law is misplaced. While we are not in a position to predict all circumstances in which we may have to step in, the problem in *Sanchez-Juarez* was that (i) there was "no indication" by the district court that it had considered the Section 3553(a) factors, and (ii) we were otherwise unable ourselves to discern a "clear explanation of the sentence" in the record. 446 F.3d at 1116. The same problem does not remotely apply to Mr. Ruiz-Terrazas's case. The record before us reveals that the district court entertained Mr. Ruiz-Terrazas's Section 3553(a) arguments at length; indicated on the record that it had considered the Section 3553(a) factors; and proceeded to explain its reliance on the range suggested by the sentencing Guidelines. In our view, no more is required by statute or our precedents.[4]

    f.    While in this case we have been called upon to explain and reconcile the basis for our decisions *Lopez-Florez* and *Sanchez-Juarez*, the Supreme Court currently has under review a case whose disposition may touch on some of these same issues. *See United States v. Rita*, 177 Fed. Appx. 357 (4th Cir. 2006) *cert. granted*, 75 U.S.L.W. 3246 (U.S. Nov. 3, 2006) (No. 06-5754). Given that the

---

    [4] Neither have we been pointed to any other, non-statutory basis for suggesting that a judge must specifically address a defendant's arguments before rendering sentence. *See, e.g.*, *Blakely v. Washington*, 542 U.S. 296, 343 (2004) (Breyer, J., dissenting) (noting that historically trial judges at common law have been afforded great "discretion within the range provided by the legislatively labeled maximum term").

Court may soon speak to some of the questions we have addressed, and given that its analysis may affect or alter our own, we think it best in this case to proceed beyond the question of error alone to examine the remaining elements of plain error review. In doing so, we conclude that, even if the district court committed error and some additional level of specificity of explanation were required of it, any such deficiency would not affect the outcome of this particular case. That is, we find that any possible error did not affect Mr. Ruiz-Terrazas's substantial rights or the fairness, integrity, or public reputation of judicial proceedings. During sentencing, defense counsel argued that a 30-month sentence "should be sufficient to deter [Mr. Ruiz-Terrazas] from coming back [into the United States]" and under Section 3553(a) his sentence should not be more than that. However, the record before us reveals that Mr. Ruiz-Terrazas previously had received a sentence of nearly the same length, 24 months imprisonment and two years parole, after violating his probation for an aggravated burglary in Kansas. At the close of this sentence, Mr. Ruiz-Terrazas was deported to Mexico whereupon, just *ten days* later, he was arrested after committing another burglary, this time in New Mexico. In light of Mr. Ruiz-Terrazas's failure to be deterred by a 24-month sentence, we are unable to agree that a sentence of a mere six months longer would, as Mr. Ruiz-Terrazas argued, convince him to stop entering this country illegally, let alone to give up his criminal activities, and the district

court's failure to discuss all this in detail makes it no less transparent from the record.

III

Separately but relatedly, Mr. Ruiz-Terrazas asks us to disregard our holding in *United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006), that "a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *Id.* at 1054. *Kristl* has been cited for this proposition more than 40 times by panels of this Court and, for reasons we have discussed, makes sense of the interrelationship between Section 3553 and the Guidelines. Even were we somehow empowered to overlook this binding precedent, or in the event our decision in *Kristl* is affected by the Supreme Court's ultimate resolution of *Rita* (or *Claiborne v. United States*, No. 06-5618) the outcome in this case would not change as we would be unable to conclude independently, as Mr. Ruiz-Terrazas would have us, that the sentence in his particular case was unreasonable in light of the advisory Guidelines range, the Section 3553(a) factors, and Mr. Ruiz-Terrazas's extensive criminal history. *See supra* at 3, 15.

Finally, Mr. Ruiz-Terrazas argues that use of his prior criminal history to calculate both his criminal history category and his offense level was improper double counting; since he did not raise this argument below, our review on this issue as well can only be for plain error. *See United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004). In any event, the Guidelines expressly state in

commentary to Section 2L1.2 that, in computing a defendant's criminal history category, a "conviction taken into account [in calculating an offense level enhancement] is not excluded from consideration of whether that conviction receives criminal history points." U.S.S.G. § 2L1.2 cmt. 6. And we have routinely upheld as reasonable the use of prior convictions to calculate both the criminal history category and a sentence enhancement where, as here, the Guidelines authorize it. *See Alessandroni*, 982 F.2d at 421; *United States v. Florentino*, 922 F.2d 1443, 1447-48 (10th Cir. 1990); *see also United States v. Murriega-Santos*, No. 05-3435, 2006 WL 3291683 at *2 (10th Cir. Nov. 14, 2006) (unpub.) (holding that double counting under Section 2L1.2 is permissible); *United States v. Hernandez-Juarez*, 185 Fed. Appx. 758, 762-63 (10th Cir. 2006) (unpub.) (same). Mr. Ruiz-Terrazas has given us no reason to suggest a different conclusion would be appropriate under the facts and circumstances of his case.

The district court's judgment is AFFIRMED.